**Philip AMES, Appellant**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, International Union of Electrical, Radio and Machine Workers, AFL–CIO, International Union of Electrical Radio and Machine Workers, AFL–CIO, Local 617, and I.U.E. Westinghouse Conference Board.**

No. 88–3281.

United States Court of Appeals, Third Circuit.

Argued Sept. 27, 1988.

Decided Dec. 28, 1988.

William G. McConnell (argued), Cusick, Madden, Joyce and McKay, Sharon, Pa., for appellant, Philip Ames.

Theodore Goldberg, Janice Savinis (argued), Henderson & Goldberg, P.C., Pittsburgh, Pa., for appellees, Intern. Union of Elec. Radio and Machine Workers, AFL–CIO; Intern. Union of Elec. Radio and Machine Workers, AFL–CIO, Local 617, and I.U.E. Westinghouse Conference Bd.

Alfred W. Vadnais, Laura A. Candris (argued), Eckert Seamans Cherin & Mellott, Pittsburgh, Pa., for appellee, Westinghouse Elec. Corp.

Before GIBBONS, Chief Judge,
SEITZ, Circuit Judge, and POLLAK,
District Judge.*

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Philip Ames, a former employee of Westinghouse Electric Corporation, appeals from a judgment dismissing as moot his hybrid action against Westinghouse and the International Union of Electrical Radio and Machine Workers, AFL–CIO, Local 617 and I.U.E. Westinghouse Conference Board (collectively, the Union). The action charges that Westinghouse breached the collective bargaining agreement applicable to employees at the Westinghouse plant in Sharon, Pennsylvania, and that the Union breached its duty of fair representation by not pursuing a contract grievance arbitration remedy on Ames' behalf. While the action was pending, Westinghouse filed a motion to dismiss supported by a showing that it and the Union had agreed to arbitrate Ames' grievance and that the Sharon plant was now permanently closed. The district court adopted the recommendation of a United States magistrate that these facts rendered Ames' lawsuit moot. Since

* Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

the court relied on matters outside the pleadings, its ruling is properly regarded as a Fed.R.Civ.P. 56 summary judgment. *De Tore v. Local 245, Jersey City Pub. Employees Union*, 615 F.2d 980, 983 (3d Cir.1980). Thus our review is plenary. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 577 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). We will affirm the dismissal of the action against Westinghouse, but reverse the dismissal against the Union, and remand for further proceedings.

## I.

From the materials in the summary judgment record a factfinder could find that Ames had been employed by Westinghouse at the Sharon plant for twenty-three years when, on November 15, 1983, he received notice that he would be laid off at year's end. During his entire employment, Ames' collective bargaining representative was the Union, which had a collective bargaining agreement with Westinghouse. That agreement contains a typical grievance arbitration clause. When, in the fall of 1983, impending layoffs were announced, Ames placed a bid for a job as a screw machine operator, then held by a member of the bargaining unit, Robert Jones. Jones had four months less seniority than Ames. Under the terms of the collective bargaining agreement, if Ames was designated by a supervisor as qualified for a job, his seniority afforded him the right of first refusal for it in preference over an employee with less seniority.

Ames was discouraged by the Westinghouse Personnel Department from pursuing his bid for Jones' screw machine job because the job was going to be eliminated in a couple of weeks. He was told by the Union president not to bother because Jones was a friend of the supervisor who would have to pass on Ames' qualifications, and thus Jones would be protected. Ames was laid off at the end of 1983.

Over a year later Ames heard a rumor that Jones had continued to work at the Sharon plant until that plant permanently closed. Ames asked a Union steward to inquire if this was so and, in March of 1985, received a letter confirming that Jones had indeed continued to work as a screw machine operator. He asked the Union steward to investigate on his behalf, and thereafter spoke with various Union officials who assured him they would follow up. While Ames never explicitly requested that the Union file a grievance, he thought that such a request was implicit in his demand for Union assistance.

His efforts to have the Union act on his behalf were unavailing and, on September 9, 1985, Ames filed a complaint under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1982), and section 102 of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 412 (1982). The complaint alleges that, by continuing to employ Jones after laying off Ames, Westinghouse violated the collective bargaining agreement, and that by failing to pursue Ames' grievance over the violation of the contract the Union breached its duty of fair representation. The complaint seeks damages in the amount of lost wages and benefits, attorneys fees, and punitive damages.

After fairly extensive discovery, Westinghouse and the Union agreed to arbitrate Ames' grievance. When the district court was so advised, it requested a report and recommendation on Westinghouse's motion to dismiss the case as moot. The magistrate pointed out, and Ames does not dispute, that since the Sharon plant is permanently closed the grievance cannot recur. The magistrate also pointed out that in the arbitration Ames can be made whole for any breach of the collective bargaining agreement. Thus, the magistrate reasoned, the entire case was moot. The district court adopted the report and recommendation of the magistrate and dismissed the complaint. This appeal followed.

## II.

An action becomes moot when "(1) there is no reasonable expectation that the alleged events will recur ... and (2) interim relief or events have completely eradicated the effects of the violation." *County of*

*Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)) (citations omitted). Ames does not dispute that the permanent closing of the Sharon plant makes future violations impossible. He does dispute, however, the district court's holding that the arbitration of his claim will irrevocably eradicate the effects of the breaches of contract and of the duty of fair representation. The potential liability of Westinghouse and of the Union require separate analysis.

## A.

### Westinghouse

Ames' claim against Westinghouse arises under section 301 of the Labor Management Relations Act of 1947, which authorizes suits in the district court for "violation of contracts between an employer and an organization representing employees." 29 U.S.C. § 185 (1982). Although the statutory language does not provide expressly for suits by individual employees to enforce collective bargaining agreements, it has long been settled that such suits are authorized by section 301 so long as the collective bargaining agreement does not otherwise provide. *E.g.*, *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). If, however, the collective bargaining agreement contains procedures for the settlement of disputes through grievance and arbitration, these contractual remedies are binding on individual employees, and their section 301 suits must be dismissed if those remedies have not been exhausted. *E.g.*, *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The exhaustion-of-contract remedies rule is in turn limited by the exception that if a union, in breach of its duty of fair representation, fails to process the employee's claim through the contract dispute resolution process, the employee can bring a hybrid section 301 action against both the employer and the union. *E.g.*, *Bowen v. United States Postal Serv.*, 459 U.S. 212, 221–22, 103 S.Ct. 588, 594–95, 74 L.Ed.2d 402 (1983); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Otherwise the union's default would leave the employee without a remedy for breach of a collective bargaining agreement of which the employee was the beneficiary. Moreover, even if the employee's claim is presented in the grievance arbitration forum, the union's bad faith handling of the claim may so taint the outcome in that forum that a section 301 suit by the employee can still be entertained. *See, e.g.*, *Humphrey v. Moore*, 375 U.S. 335, 348–51, 84 S.Ct. 363, 371–73, 11 L.Ed.2d 370 (1964). When either form of breach of the duty of fair representation has occurred, the employee is entitled to an appropriate remedy against the employer, as well as the union. *E.g.*, *Hines v. Anchor Motor Freight*, 424 U.S. 554, 572, 96 S.Ct. 1048, 1060, 47 L.Ed.2d 231 (1976).

In determining what is an appropriate remedy against an employer, however, we cannot lose sight of the point that the employee's claim is contractual in nature. When the collective bargaining agreement provides for an arbitral resolution of what is due to an employee, an appropriate remedy would appear in most instances to be an arbitration conducted by the union in good faith. If the arbitrator finds in Ames' favor, the award may include back pay and restoration of other benefits such as pension rights. Ames does not contend that he would be entitled to a greater award for breach of the collective bargaining agreement than he could obtain in an arbitration proceeding conducted in good faith. Rather, Ames urges that in a hybrid action he is entitled to a make-whole remedy which includes both contractual and non-contractual damages. In support of that contention, Ames points to the holding in *Vaca v. Sipes* that, while an order compelling arbitration is an available remedy in some hybrid actions, it is not the only available remedy. As the *Vaca* court observed:

> [W]e see no reason inflexibly to require arbitration in all cases. In some cases, for example, at least part of the employ-

ee's damages may be attributable to the union's breach of duty, and the arbitrator may have no power under the bargaining agreement to award such damages against the union.

386 U.S. at 196, 87 S.Ct. at 919. The additional damages which Ames seeks are the attorneys fees and costs incurred by him in pursuing a contract claim which the Union should have processed on his behalf.

■ Ames does not allege that Westinghouse instigated or participated in the Union's breach of the duty of fair representation. Thus we can postpone for another occasion consideration of the question whether, if such instigation or participation were alleged, an employer would be liable for non-contractual damages. In this case the claim against Westinghouse is entirely contractual in nature. Moreover, no provision of the collective bargaining agreement authorizes the award of attorneys' fees for its breach, and no statute authorizes fee shifting in section 301 cases. Between Ames and Westinghouse, absent a contract or a statute authorizing fee shifting, the claim for attorneys' fees as damages falls squarely within the American rule that each party to a lawsuit pay its own attorneys' fees. Nor do any of the exceptions to the American rule recognized in *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257–59, 95 S.Ct. 1612, 1621–23, 44 L.Ed.2d 141 (1975), apply to this case. Ames does not contend that Westinghouse disobeyed a court order or conducted the lawsuit in bad faith. Nor does he contend that he conferred a common benefit on others in addition to himself. There is no legal authority, therefore, for an award of attorneys' fees against Westinghouse. Thus we hold that the district court did not err in dismissing Ames' case against Westinghouse.

## B.

### The Union

■ Ames' claim against the Union presents an issue that is analytically distinct. Indeed, the section 301 contract action against the employer and the duty of fair representation action against the Un-

ion are so analytically distinct that the latter may proceed even when the former has been dismissed. *Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). The claim that the Union breached its duty of fair representation is predicated upon the duties which are imposed by the federal labor law on collective bargaining representatives with respect to the enforcement of collective bargaining agreements. Among those duties is the fair and prompt consideration and, if dictated by controlling legal standards, processing on behalf of employees of their claims under contract dispute resolution procedures. Absent the alleged breach of that duty, Ames would not have been required to retain an attorney in order to pursue his contract remedies against Westinghouse. When there is a legal duty to provide representation, whether that duty arises out of a contractual undertaking or, as here, by operation of law, if the representation is wrongfully withheld, the cost of substitute representation should be recoverable damages. This is not to say that in the suit against the Union fee shifting as such would be appropriate. Rather, the employee should recover as damages from the Union only the attorneys' fees incurred in pursuing the section 301 claim against the employer— consequential damages flowing from the Union's alleged breach of its duty of fair representation. We join those courts of appeals which have so held. *See, e.g., Bagsby v. Lewis Bros. Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir.1987); *Zuniga v. United Can Co.*, 812 F.2d 443, 454–55 (9th Cir.1987); *Stanton v. Delta Air Lines*, 669 F.2d 833, 838 (1st Cir.1982); *Seymour v. Olin Corp.*, 666 F.2d 202, 215 (5th Cir. Unit B Jan. 1982); *Self v. Drivers, Chauffeurs, Warehousemen & Helpers Local Union No. 61*, 620 F.2d 439, 444 (4th Cir.1980); *see also Bygott v. Leaseway Transp. Corp.*, 637 F.Supp. 1433, 1442 (E.D.Pa.1986); *Chuy v. National Football League Players Ass'n*, 495 F.Supp. 137, 141 (E.D.Pa. 1980).

■ The district court erred, therefore, in holding that the agreement between the Union and Westinghouse to grieve and ar-

bitrate Ames' breach of contract claim mooted his duty of fair representation lawsuit. On remand, the district court must determine under appropriate standards, whether the Union breached its duty to Ames. If it did, his claim for damages caused by such breach, in the form of reasonable attorneys' fees, separate from the damages he may recover from Westinghouse, must be awarded unless there are other valid defenses.

### III.

The district court correctly held that the agreement between the Union and Westinghouse to grieve and arbitrate Ames' breach of contract claim mooted his section 301 breach of contract claim. The judgment in favor of Westinghouse will, therefore, be affirmed. The district court erred, however, in dismissing on mootness grounds Ames' duty of fair representation suit against the Union. The judgment in favor of the Union will, therefore, be reversed, and the case remanded for further proceedings.