**Philip BERG, Plaintiff,**

v.

**Yvette KANE, et al., Defendants.**

**No. Civ.A. 98–1601.**

United States District Court,
E.D. Pennsylvania.

April 3, 1998.

Samuel C. Stretton, West Chester, PA, for Plaintiff.

Gwendolyn T. Mosely, Office of Attorney General, Harrisburg, PA, for Defendant.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

KATZ, District Judge.

**AND NOW**, this 3rd day of April, 1998, upon consideration of plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, and the response thereto, and after a hearing, it is hereby **ORDERED** that the said motion is **DENIED.**

*Findings of Fact*

1. Pennsylvania requires the plaintiff, who seeks the Democratic nomination for Governor in the May 19, 1998 primary election, to present a nominating petition that includes at least 100 members from that party from at least ten of Pennsylvania's sixty-seven counties. *See* 25 Pa.Cons.Stat. Ann. § 2872.1(3).

2. Philip Berg, a Montgomery county lawyer, wishes to be included on the ballot for the Democratic primary for governor of Pennsylvania.

3. Toward that end, Berg collected over 3,000 signatures across Pennsylvania.

4. Berg was able to obtain the required signatures in nine counties: Allegheny, Cambria, Delaware, Lancaster, Luzerne, Montgomery, Northampton, Philadelphia, and Washington. He believed he had obtained the appropriate 100 signatures in Dauphin county. He also obtained more than ninety signatures in Chester and York counties.

5. A successful challenge to about fifty signatures obtained in Dauphin county means that plaintiff has not met the requirements set forth in 25 Pa.Cons.Stat.Ann. § 2872.1(3). Plaintiff concedes that he was five signatures short of the one hundred signatures required. Plaintiff has challenged the constitutionality of the one hundred signature-ten county requirement in the Commonwealth Court case where the successful challenge was mounted, and that case is pending.

6. In the Commonwealth of Pennsylvania, there are sixty-seven counties of widely varying populations with the vast majority of the population in Pennsylvania being located in Philadelphia County, Delaware County, Montgomery County, Chester County, Bucks County, and Allegheny County. In fact, the registered Democratic voters in the five county area around Philadelphia is a significant percentage of the registered Democratic voters statewide.

7. Philip Berg has been campaigning for a number of months and has spent substantial time and money on his campaign to seek the Democratic nomination for Governor of Pennsylvania.

8. Plaintiff claims that he will suffer irreparable harm in that the statute in question will impair his candidacy to run for the Democratic nomination for governor in the May 19, 1998 and violates his rights under the First, Fifth, and fourteenth Amendments of the United States Constitution, or, in other words, his rights of association, franchise, equal protection, and due process. The ballot must be printed shortly, so the issue is exigent.

9. Plaintiff claims that the distribution requirements of one hundred signatures in ten counties has no relationship to the population in Pennsylvania's counties and, in fact,

dilutes the voting strength of persons in counties with large populations in Pennsylvania and violates the one person/one vote principle.

*Conclusions of Law*

1. This court has jurisdiction over this matter. 28 U.S.C. § 1331.

2. Venue is proper in this district. 28 U.S.C. § 1391(b).

■ 3. This court declines to abstain because a federal plaintiff may pursue parallel actions in the state and federal courts where, as here, the relief's collateral effects in the state proceedings are not interference for *Younger* purposes. *See Marks v. Stinson*, 19 F.3d 873, 885 (3d Cir.1994). As the Third Circuit stated:

> Abstention, nevertheless, is the exception and not the rule. The federal courts' obligation to adjudicate claims within their jurisdiction is virtually unflagging.... Although *Younger* abstention is founded on notions of comity, the mere pendency of an action in state court is no bar to proceedings concerning the same subject matter in the Federal court having jurisdiction. The presence of two parallel suits ... does not run afoul of *Younger*. This is true even in cases where there exists a potential for conflict in the results of adjudications. A federal court will only consider *Younger* abstention when the requested equitable relief would constitute federal interference in state judicial or quasi-judicial proceedings. Thus, while a proponent of abstention must show (1) there are on going state proceedings involving the would-be federal plaintiffs that are judicial in nature, (2) the state proceedings implicate important state interests, and (3) the state proceedings afford an adequate opportunity to raise the federal claims, such a showing does not require that the federal court abstain. Where federal proceedings parallel but do not interfere with the state proceedings, the principles of comity underlying *Younger* abstention are not implicated.... Moreover, since parallel proceedings always involve a likelihood that a final merits judgment in one will effectively terminate the other, it necessarily follows that the

mere fact that a judgment in the federal suit might have collateral effects in the state proceeding is not interference for *Younger* purposes.

*Id.* at 881, 882, 885 (citations omitted).

4. In order to obtain a preliminary injunction, the court must consider whether: 1) the movant has shown a reasonable probability of success on the merits; 2) the movant will be irreparably injured by denial of relief; 3) granting preliminary relief will not result in even greater harm to the nonmoving party; and 4) granting the preliminary relief will be in the public interest. *See Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 879 (3d Cir.1997).

5. The Supreme Court invalidated as discriminatory against residents of the populous counties an Illinois statute requiring independent candidates to have 25,000 signatures, including 200 signatures from each of at least 50 of Illinois' 102 counties. *See Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). The *Moore* court noted that 93.4% of registered voters in Illinois resided in 49 of the most populous counties, and only 6.6% of the registered voters resided in the other counties. *See id.* at 819.

■ 6. The key issue for this court requires a concrete evaluation of the burden that the state requirements impose on the practical opportunities for exercising political weight at the polls between thinly populated counties and those having more concentrated populations. To obtain a preliminary injunction, plaintiff must show a reasonable probability of success on the merits. Such a showing turns on a meaningful, factual determination of the extent of the burden. It is not at all clear whether the challenged restriction unreasonably burdens the availability of political opportunity in this case. Facts, not abstractions, must control the decision of particular cases. The court must weigh the character and magnitude of the burden the state's rule imposes on First Amendment rights against interests the state contends justify that burden, and the court must also consider the extent to which the state's concerns make the burden necessary. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S.Ct. 1364,

**636**

1369, 137 L.Ed.2d 589 (1997); *Patriot Party v. Allegheny Cty. Dept. of Elections,* 95 F.3d 253, 256–57 (3d Cir.1996). The burden imposed on plaintiff by the law was particularly slight, if one credits his own concession that he was only five signatures short of the 100 signatures required in Dauphin County.

7. The court notes, as plaintiff has, another decision of a court in this District that has questioned, in dictum, the constitutionality of the statute challenged in this case. *See Trinsey v. Mitchell,* Civ.A. No. 94–0976, 1994 WL 70103 (E.D.Pa. Feb.28, 1994). The court also notes that the Eighth Circuit has upheld a Missouri statute requiring signatures from all, or at least half of its Congressional districts, and at least one of two percent of votes cast in a prior election, as being distinguishable from *Moore* and not impinging on issues of voter equality. *See Libertarian Party v. Bond,* 764 F.2d 538, 543–44 (8th Cir.1985). In a case involving a different, but somewhat analogous statute, the Commonwealth Court also found that the statute implicated did not allow a minority to frustrate the majority will. *See Cavanaugh v. Schaeffer,* 65 Pa.Cmwlth. 620, 444 A.2d 1308 (1982).

8. The spectrum of burden imposed on a person seeking to be on a state-wide (or national) ballot varies with the facts of each case and must be calibrated with as much precision as real conditions allow. *See, e.g., Patriot Party,* 95 F.3d at 258. As a result, the vagueness of this record as to any "real world" burden on the plaintiff does not permit what would be, in these circumstances, an unduly intrusive preliminary injunction. *See Consumer Party v. Davis,* 778 F.2d 140 (3d Cir.1985).

9. This case does not present a situation in which the state is unable to articulate a sound reason for the statute in question. *Cf. Hooks,* 121 F.3d at 881–83. Achieving some reasonable support for a candidacy in a handful of counties is a legitimate effort to avoid ballot clutter and confusion.

10. The burden the statute places on a candidate is not very severe. The plaintiff collected more than 3,000 signatures and was able to meet those requirements in nine counties and came close to the requirements in three counties. A successful challenge to the signatures in Dauphin county may be just as well attributable to his carelessness in getting correct addresses or the names of members of the Democratic party rather than to any burden of constitutional proportions.

11. Under the circumstances, plaintiff has not demonstrated a reasonable probability of success on the merits, and accordingly, the injunction is denied.