

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-15-1998

# Patriot Party Alghny v. Alghny Cty Dept

Precedential or Non-Precedential:

Docket 96-3677

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Patriot Party Alghny v. Alghny Cty Dept" (1998). *1998 Decisions.* Paper 142.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/142

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 15, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-3677 and 97-3359

THE PATRIOT PARTY OF ALLEGHENY COUNTY

v.

ALLEGHENY COUNTY DEPARTMENT
OF ELECTIONS; MARK WOLOSIK,
Director of the Allegheny County
Department of Elections,
        Appellants

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(Civil Action Nos. 93-cv-01884 and 95-cv-01175)

Argued December 12, 1997

Before: NYGAARD, ALITO, Circuit Judges, and
DEBEVOISE, District Judge.*

(Opinion Filed: June 15, 1998)

        Kerry Fraas
        Allan J. Opsitnick (Argued)
        Michael McAuliffe Miller
        Allegheny County Law Department
        300 Ft. Pitt Commons
        445 Ft. Pitt Blvd.
        Pittsburgh, Pa. 15219
         Attorneys for Appellants
_____

*The Honorable Dickinson R. Debevoise, Senior United States District
Judge for the District of New Jersey, sitting by designation.

        Sarah E. Siskind
        Miner, Barnhill & Galland
        44 East Mifflin Street, Suite 803
        Madison, WI 53703

        Jonathan B. Robison
        712 Allegheny Building
        429 Forbes Avenue
        Pittsburgh, PA 15219

        Cornish F. Hitchcock (Argued)
        Public Citizen Litigation Group
        1600 20th Street, N.W.
        Washington, D.C. 20009-1001
         Attorneys for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

The two appeals now before us require us to determine whether this court's decision in Patriot Party of Allegheny County v. Allegheny County Dep't of Elections, 95 F.3d 253 (3d Cir. 1996) (Patriot Party I), remains good law in light of the Supreme Court's subsequent decision in Timmons v. Twin Cities Area New Party, 117 S. Ct. 1364 (1997), which upheld a Minnesota "anti-fusion" statute against a First Amendment attack. Because Patriot Party I held that the Pennsylvania statutes at issue here violated the Patriot's Party right to the equal protection of the laws, as well as its right to freedom of association, and because we conclude that our panel is bound by Patriot Party I, at least insofar as it held that the statutes violate equal protection, we affirm the district court orders in both appeals.

I.

In both cases before us, the Patriot Party of Allegheny County challenged 25 Pa. Con. Stat. Ann. SS 2936(e) and 2911(e)(5) as violating the Party's right to freedom of association and its right to the equal protection of the law. These Pennsylvania statutes are described in detail in the

2

opinion in Patriot Party I, 95 F.3d at 256–57, but in brief they permit the major parties to "fuse" candidates for certain local offices but preclude minor parties from engaging in this same practice.1

In one of the two appeals (No. 97–3359), we are asked to review the order entered by the district court after the remand in Patriot Party I. That case began when the Patriot Party challenged the constitutionality of the statutes as applied to prevent the Party from nominating a particular candidate for the position of local school director in 1993 because he had previously sought the nomination of the major parties for that office.2 The district court rejected the Party's free association and equal protection claims, holding that the state's legitimate interest in regulating its ballot justified the restraints that the election code placed on minor parties. See Patriot Party I, 95 F.3d at 257. A divided panel of our court then reversed and remanded. The County and its director of elections petitioned unsuccessfully for rehearing, see 95 F.3d at 272, but did not seek a writ of certiorari. On remand, the district court entered an order on December 11, 1996, declaring that 25 Pa. Con. Stat. Ann. SS 2936(e) and 2911(e)(5) place an unconstitutional burden on the Patriot Party's rights to free association and equal protection insofar as they prohibit the Party from nominating any person as a candidate for the offices in question because that person is also a major

_____

1. "Fusion" is "the nomination by more than one political party of the same candidate for the same office in the same general election." 117 S. Ct. at 1367, n.1, citing Twin Cities Area New Party v. McKenna, 73 F.3d 196, 197–98 (8th Cir. 1996).

2. In 1993, Michael Eshenbaugh sought the nomination of both the Republican and Democratic Parties in the school director election. Eshenbaugh won the Democratic (but not the Republican) nomination. The Patriot Party then nominated its candidates for the school director positions. Eshenbaugh was one such candidate. Eshenbaugh willingly accepted the Patriot Party nomination. When Eshenbaugh attempted to file his nominating papers, the County informed him that because he had previously sought the nomination of the major parties, Pennsylvania law prohibited him from filing nomination papers to run on a minor party ticket. The Patriot Party then filed suit for declaratory and injunctive relief in February 1994.

party candidate. The court also enjoined the County and its director of elections from enforcing these statutes under such circumstances. On April 28, 1997, the Supreme Court handed down its decision in Timmons, and two days later, the County filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b). The district court denied the motion, and the County appealed.

The other appeal (No. 96-3677) concerns a separate suit in which the Patriot Party challenged the same Pennsylvania provisions as they were applied to a 1995 school director election.3 In October 1996, (several months before Timmons was decided), the district court granted the Patriot Party's motion for summary judgment based on this court's decision in Patriot Party I. The district court entered an order granting the same declaratory and injunctive relief as it did on remand in the case involving the 1993 election. The County appealed that order as well.

II.

As noted, a prior panel of our court previously held in Patriot Party I that 25 Pa. Con. Stat. Ann.SS 2936(e) and 2911(e)(5), which prohibit minor but not major parties from nominating "fusion" candidates in certain local elections, violate minor parties' rights to freedom of association and equal protection of the laws, but the Supreme Court later held in Timmons that a generally applicable anti-fusion law did not infringe the associational rights of a political party or voters. Needless to say, we are required to follow decisions of the Supreme Court, but it is also our court's tradition that a panel may not overrule or disregard a prior panel decision unless that decision has been overruled by the Supreme Court or by our own court sitting en banc.

_____

3. On May 16, 1995, the Patriot Party nominated Barbara Childress for the 1995 school director election in North Allegheny School District. Childress filed the appropriate nomination papers with the County's Department of Election. Childress then won the Republican and Democratic nominations for the election. In late May, the Department informed Childress that the Pennsylvania Code prohibited Childress from seeking a nomination by a minor party since she had previously filed a nomination petition.

4

See Nationwide Ins. Co. of Columbus, Ohio v. Patterson, 953 F.2d 44, 46 (3d Cir. 1991). Here, we conclude that Patriot Party I's equal protection holding was not overruled by Timmons and that while the reasoning underpinning that holding is arguably in tension with the Supreme Court's reasoning in Timmons, it is not clear that reconciliation is impossible. Under these circumstances, we do not feel free to disregard another panel's decision.

In Patriot Party I, a panel of this courtfirst concluded that Pennsylvania's fusion ban violated the Patriot Party's right to freedom of association. The panel looked to the standard set out in Eu v. San Francisco County Democratic Cent. Comm., 489 U.S. 214, 222 (1989), and Anderson v. Celebrezze, 460 U.S. 780, 789 (1983). Under this standard, a court must first inquire whether a challenged election law burdens First Amendment rights. 95 F.3d at 258. If it does, the court must gauge the character and magnitude of the burden and weigh it against the importance of any countervailing state interests. Id. The court must examine not only the legitimacy and strength of the state's proffered interests, but also the necessity of burdening the plaintiff 's rights in order to protect those interests. Id. If the burden on the plaintiff 's rights is severe, the state's interests must be compelling, and the law must be narrowly tailored to serve the state's interests. Id.

Applying this standard, the Patriot Party I panel held that the challenged Pennsylvania laws were unconstitutional. 95 F.3d 268. The court concluded that the statutes burdened the Patriot Party in two ways: (1) by preventing the Party from nominating the standard bearer whom the party believes "will most effectively advance its program and platform" and (2) by depriving the Party of its ability to "fuse" its votes with those of a major party and thus make inroads into the political process. Id. at 258-61. The panel found that these burdens were severe and that Pennsylvania was accordingly required to demonstrate that the statutes were narrowly tailored to serve compelling interests. Id. at 264. The panel decided, however, that the County's proffered justifications for the fusion ban did not meet this stringent test. Id. at 264. The court reviewed the interests asserted by the County -- preventing sore loser

5

candidates, preventing independent candidates from monopolizing the ballot or causing voter confusion, preventing candidates from "bleeding off" independent candidates, and encouraging new candidates to run as independents -- and found each of them to be insufficient. Id. at 267-68.

The panel then turned to the equal protection analysis, noting that this analysis was "similar in many respects to the balancing test that [the panel] applied to[the] free association claim." 95 F.3d at 269. Under the equal protection analysis, the panel followed the Supreme Court's decision in Williams v. Rhodes, 393 U.S. 23 (1968). 95 F.3d at 268. In accordance with that decision, the panel examined whether the Pennsylvania laws created invidious classifications. 95 F.3d at 269, (citing Williams, 393 U.S. at 30). Specifically, the panel measured the totality of the burden that the laws placed on the voting and associational rights of the Patriot Party against the justifications that Pennsylvania offered to support the law. 95 F.3d at 269, (citing Williams, 393 U.S. at 34). The panel then held that Pennsylvania's decision to ban cross-nominations by minor political parties and to allow cross-nomination by major parties constituted the type of "invidious classifications" prohibited by the Equal Protection Clause. 95 F.3d at 269. The court noted that the Pennsylvania statutes laws treated minor and major parties differently and placed a more severe burden on minor political parties' rights. Id. at 269. In weighing these burdens against Pennsylvania's proffered justifications, the court restated its earlier conclusion that the County had offered no compelling justification for Pennsylvania's facially discriminatory laws. Id. at 269-70. Indeed, the panel went so far as to state that the Pennsylvania scheme "impose[d] . . . unequal burdens on the right to vote and the right to associate without protecting any significant countervailing state interest." Id. at 269.

In Timmons, the Supreme Court, like the Patriot Party I panel, applied the test established in Eu and Anderson to determine whether Minnesota's general fusion ban violated the right to freedom of association, but the Court concluded that the Minnesota fusion ban did not violate this right.

6

117 S. Ct. at 1370-71. The Court determined that the burdens imposed on the minor political parties' associational rights by Minnesota's anti-fusion statute, "though not trivial," were not severe. Id. at 1372. The Court explicitly rejected the contention that the ban imposed a severe burden because it might preclude a party from nominating the individual whom it most desired as its standard bearer. Id. at 1370 ("[t]hat a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights"). Additionally, the Court indicated that the anti-fusion statute did not create a severe burden on the party's attempts to organize: "Minnesota has not directly precluded minor political parties from developing and organizing . . . . Nor has Minnesota excluded . . . a political party[ ] from participation in the election process." Id. at 1371.

Because the Timmons Court found that the burdens on minor political parties were not severe, the Court conducted a "less exacting review" of Minnesota's proffered justifications. 117 S. Ct. at 1370. Under this review, "important regulatory interests" are enough to justify "reasonable, nondiscriminatory restrictions." Id. Although the Court declined to consider Minnesota's interest in avoiding voter confusion, the Court concluded that the burdens imposed on minor political parties by Minnesota's fusion ban were justified by "correspondingly weighty" state interests in ballot integrity and political stability. Id. at 1375.

Although Timmons, unlike the suits brought by the Patriot Party, did not involve an equal protection claim, there is plainly at least some tension between the Supreme Court's reasoning in Timmons and the Patriot Party I panel's equal protection analysis. As the Patriot Party I panel opinion recognized, the balancing test used to determine whether an election law violates a political party's right to freedom of association is similar to the test employed to determine whether an election law violates a political party's equal protection rights. 95 F.3d at 269 ("our analysis of the Patriot Party's equal protection claim is similar in many respects to the balancing test that we

7

applied to its free association claim."). The Supreme Court's reasoning in Timmons may thus affect the continuing validity of the panel's equal protection analysis in Patriot Party I. However, the anti-fusion law at issue in Timmons did not facially discriminate, as does the fusion ban in the present case. As a result, although the burdens imposed by Pennsylvania's fusion ban are in some respects quite similar to those created by the Minnesota statute, the burdens on the Patriot Party may be magnified because they are not applied equally to all political parties.

Furthermore, even if the burdens created by the two states' fusion bans are regarded as essentially the same for present purposes, and the Pennsylvania fusion ban places less than severe burdens on the Patriot Party's rights, it is not entirely clear that Pennsylvania's interests are sufficiently weighty to justify those burdens. Because each state's fusion ban serves different interests, we do not believe that the Supreme Court's decision in Timmons is necessarily fatal to this court's earlier conclusion that the election laws do not protect significant state interests. See Patriot Party I, 95 F.3d at 269. In addition, as the previous panel noted, the fact that Pennsylvania permits major parties to cross-nominate weakens the validity of Pennsylvania's asserted interests. See 95 F.3d at 267. For all these reasons, we do not feel free to disregard the panel opinion in Patriot Party I.

III.

Because the Supreme Court's decision in Timmons did not overrule the prior panel's equal protection holding in Patriot Party I, there are no extraordinary circumstances to justify granting the County's Rule 60(b) motion. Rule 60(b)(6) is available only in extraordinary circumstances. Martinez-McBean v. Government of Virgin Islands, 562 F.2d 908, 911 (3d Cir. 1977).4 Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6). Polites
_____

4. The County originally moved for relief from judgment under Rule 60(b)(4) and (6). On appeal, however, they requested relief under Rule 60(b)(6).

8

v. United States, 364 U.S. 426, 433 (1960). However, this rule is not to be inflexibly applied. Id.

Because the Supreme Court's decision in Timmons did not clearly overrule the equal protection holding in Patriot Party I, it does not provide the extraordinary circumstances needed for Rule 60(b)(6) relief. As a result, that holding remains binding circuit law, and the district court had no basis for granting the County relief. We note that if Timmons had explicitly overruled this court's equal protection holding in Patriot Party I, that intervening change in law, coupled with the prospective nature of the district court's injunction and the district court's declaration that Pennsylvania's statute was unconstitutional, might constitute the extraordinary circumstances needed for relief under Rule 60(b)(6). We need not decide this issue, however, since the Patriot Party I equal protection holding is binding on this panel.

IV.

For these reasons, we affirm the orders of the district court in both of the appeals now before us.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

9